# In the United States Court of Federal Claims

Thomas Benjamin Kuh )
)
_____ )
       **Plaintiff(s),** )    **Case No.** _____  26-788C
)
**v.** )    **Judge** _____
)
**THE UNITED STATES,** )
)
       **Defendant.** )
_____ )

## COMPLAINT

Your complaint must be clearly handwritten or typewritten, and you must sign and declare under penalty of perjury that the facts are correct. If you need additional space, you may use another blank page. A fillable pdf is available at http://uscfc.uscourts.gov/filing-a-complaint.

If you intend to proceed without the prepayment of filing fees (*in forma pauperis* (IFP)), pursuant to 28 U.S.C. § 1915, you must file along with your complaint an application to proceed IFP.

1. **JURISDICTION.** State the grounds for filing this case in the United States Court of Federal Claims. The United States Court of Federal Claims has limited jurisdiction (*see* e.g., 28 U.S.C. §§ 1491-1509).

*See Attached*

Received - USCFC

MAY 2 7 2026

A-5

2. **PARTIES**

Plaintiff, _Thomas Benjamin Kuehl_ resides at _710 Colling St, Apt 807_
(Street Address)

_Kalamazoo, Michigan / 49001 (269)359-5109_
(City, State, ZIP Code)        (Telephone Number)

If more than one plaintiff, provide the same information for each plaintiff below.

3. **PREVIOUS LAWSUITS.** Have you begun other lawsuits in the United States Court of Federal Claims?  ☐ Yes ☒ No

If yes, please list cases: _____

4. **STATEMENT OF THE CLAIM.** State as briefly as possible the facts of your case. Describe how the United States is involved. You must state exactly what the United States did, or failed to do, that has caused you to initiate this legal action. Be as specific as possible and use additional paper as necessary.

See Attached

A-6

**5. RELIEF.** Briefly state exactly what you want the court to do for you.

See Attached

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___18'th___ day of ___May___, ___2026___.
             (day)                    (month)           (year)

Signature of Plaintiff(s)

A-7

*Original*

## U.S. COURT OF CLAIMS

Thomas Benjamin Kuhl

Plaintiff                                                                          Case#:


v.


UNITED STATES

Defendant


### CIVIL COMPLAINT


I, Thomas Benjamin Kuhl, Plaintiff, come to this Court complaining of Defendant, United States, and

allege as follows:


### JURISDICTION AND VENUE

1.  This action is brought against the United States pursuant to 28 U.S.C. Section 1491, and the

    Fifth Amendment to the United States Constitution, as this action seeks redress for the

    violation of my constitutional rights.

2.  There is no directly related case pending or previously filed in the United States Court of

    Claims concerning the property and claims at issue in this action.

3.  Venue is proper in this Court because all of events giving rise to this action occurred in the

    United States.

4. The amount in controversy exceeds $10,000.

PARTIES

5. I am a citizen of the United States and was the last titled owner of the 2016 Nissan 370z at issue in this action.

6. Defendant United States is a country and bound by its laws and Constitution; Defendant has waived sovereign immunity under the Tucker Act.

FACTUAL ALLEGATIONS

7. In the summer of 2021, I became the titled owner of the 2016 Nissan 370z VIN JN1AZ4EH2GM932612 ('The Nissan' from here on). (Ex1: Title of Nissan)

8. This vehicle was the last vehicle driven by my father, James Arthur Kuhl, before he passed in June Of 2023. Thus, the Nissan has sentimental value.

9. FBI Task Force Officer, Jonathan Stolsonberg, and FBI Special Agent, Jeff Buttery, alongside law enforcement officers of Kalamazoo Dept. of Public Safety, seized Plaintiff's 2016 Nissan 370z, VIN JN1AZ43H2GM932612, in relation to an ongoing FBI investigation into Samuel Kuhl for suspected fraud crimes on 11/3/2022.

10. The Nissan is worth approximately $20,000 and was purchased in the summer of 2021.

11. On November 2, 2022, my nephew, Samuel Kuhl was convicted at trial in the Ninth Circuit Court of Kalamazoo County for the felony assault and firearms charges. I was not aware of

Samuel's trial or conviction until weeks after the trial and seizure of the Nissan.

12. During a recess in the trial, Samuel left the courthouse and did not return. Samuel was able to do this because he was out on bond and not in custody at the trial.

13. On November 3, 2022, the FBI was surveilling an apartment at 811 Oakland Drive in Kalamazoo, Michigan where Samuel was staying--along with Kalamazoo police officer Greg Day--and followed Samuel when he left from that apartment. Shortly after leaving the apartment, Samuel was pulled over by Kalamazoo police and ran from the vehicle. Samuel was arrested and charged with resisting arrest, and taken to the Kalamazoo County Jail (Ex. 2 KDPS Incident report 22-016407).

14. After Samuel's arrest on November 3, 2022, which took place approximately 10-15 minutes after he had left the apartment, the FBI executed a search warrant for the apartment (Ex 3, Search Warrant for 811 Oakland drive and supporting Affidavit), through its Task Force Officer (TFO) John Stolsonberg, who is also a Detective with the Kalamazoo Department of Public Safety (KDPS) of Kalamazoo, Michigan.

15. This search was predicated on a fraud investigation by the FBI that had been ongoing since early 2021. The main investigators of this matter were FBI Special Agents (SA) Jeff Buttery and Brent Johnson, as well as TFO Stolsonberg.

16. During the Search Warrant execution at 811 Oakland Drive the Nissan was seized due to the allegation that a person the Postal Inspector believed might be Samuel had tried to purchase a postal key from a Kalamazoo USPS postal worker, and that USPS postal worker had allegedly seen a Nissan that looked like the vehicle that approached him parked near my brother David Kuhl's home at 631 Dwight Avenue in Kalamazoo two weeks before the incident occurred. The postal worker reported that he took a picture of the Nissan parked near my brother's home because he "was interested in cars and thought it was a "nice

sports car" car (Ex 4, USPS Report About Key incident)". My father, James, was also residing at David's home at the time and David is Samuel's adoptive father.

17. Never was I aware that Samuel may have committed any crime in the Nissan, although I did allow him to drive the car occasionally.

18. No keys to the Nissan were located at 811 Oakland Drive, although the car was parked in the Driveway. This is because David had the keys as he was aware of Samuel's trial and did not want Samuel trying to take the Nissan. In the 811 Oakland Drive search warrant it is noted that the Nissan had been parked approximately a week without moving ((Ex 3, page 4 of Affidavit, paragraph "P").

19. The FBI utilized its towing agent McDonalds Towing in Kalamazoo to seize and store the vehicle in relation to the fraud investigation.

20. While Samuel was incarcerated in the Kalamazoo County Jail awaiting sentencing from the Jury conviction on November3, 2022, SA Buttery was listening to Samuel's phone calls and learned of a traffic stop involving Samuel in Wyoming, Michigan on October 13, 2022. (Ex. 2 page 29 of 32)

21. This led to SA Buttery and TFO Stolsonberg reaching out to Wyoming Police, who then referred these FBI officers to Michigan State Police (MSP) because phones, money, and multiple debit cards in different names had been seized from Samuel during the stop and turned over to MSP.

22. Upon reaching out to MSP, the federal officers learned of a separate investigation that had been launched by MSP for crimes unrelated to fraud due to evidence discovered on

Samuel's phone.

23. On December 6, 2022, SA Buttery and FTO Stolsenburg interviewed me and I told them that I did have the vehicles which my nephew Samuel drove, however, they did not inform me that they had seized my Nissan (Ex. 5, FBI Interview Report for 12-6-2022).

24. The FBI abandoned the fraud investigations upon learning of the MSP investigations into sex offences.

25. After the Nissan was seized, my brother David reached out to towing agencies and KDPS multiple times trying to locate the vehicle and get it returned.

26. In April of 2023, Samuel was indicted in the Western District of Michigan for federal crimes predicated upon the MSP evidence discovered on Samuel's phone seized during the Wyoming traffic stop on October 13, 2022. (Ex.6: See US v. Kuhl, 1:23-cr-44 ECF No. 1) This indictment had no relation to fraud or the Nissan.

27. The FBI abandoned its fraud investigations after the federal indictment of April 25, 2023, but did not initiate forfeiture proceedings for the Nissan or return it.

28. Despite the new federal indictment having no relationship to fraud, the postal key solicitation. or the Nissan, the United States maintained possession of the vehicle without instituting forfeiture proceedings or any criminal charges related to the Nissan.

29. In July of 2023, David Kuhl reached out to the KDPS on our behalf seeking return of the vehicle. KDPS detective Greg Day stated that they usually did not return vehicles when people are running a million-dollar fraud operation. David told him that the vehicle belonged to me and that David had a lien on the vehicle because of money he had put towards initially buying the car. David also informed Mr. Day that neither he nor I had

knowledge of the alleged fraudulent activity by Samuel and the vehicle was not used to commit any crimes that we were aware of.

30. Eventually in April of 2024, David contacted the prosecutor of Kalamazoo County Benjamin Norg trying to get the Nissan back.

31. Norg was unaware of the Nissan and emailed FBI TFO John Stolsonberg to check if the vehicle was in possession of the government. (Ex. 7—emails between Norg, Stolsonberg, and McDonald's Towing)

32. Stolsonberg contacted SA Buttery, who in turn spoke to an Attorney of the United States, who stated the Nissan could be released supposedly because Samuel was going through mental health evaluations in the federal case and would not be sentenced for about another year. (Ex. 7). However, the federal case had nothing to do with the Nissan. Regardless, the United States was in control of the retention of the Nissan and directed its agents KDPS and McDonalds Towing to keep the Nissan despite having no government interest in doing so.

33. On May 7, 2024, Stolsonburg, emailed McDonalds Towing to remove the police hold on the Vehicle.

34. Never was I informed that the Nissan could be redeemed (nor that the police hold had been removed), nor were David or Samuel.

35. On or about June 25, 2024, I received a Notice of Abandoned Vehicle from the Michigan Secretary of State, stating the Nissan had been deemed abandoned.

36. Upon receiving this notice I tried to get the vehicle back, but McDonalds Towing told me I had to pay over $18,000 in towing and storage fees before I could get my car.

37. I tried to go to the 8'th District Court of Kalamazoo County to file a petition for a hearing to

challenge the towing/storage fees as well as the determination that I had abandoned the vehicle.

38. The 8'th District court would not allow me to file the petition unless I paid a 'bond' in the amount of the total towing/storage fees plus $40.00. Despite my brother David and me telling the court clerks—on several occasions—that we could not afford that amount, the District Court refused to accept the petition.

39. I tried to file a motion in the 8'th District Court to compel KDPS to pay the fees to file the petition due to my inability to afford such fees myself. However, the 8'th District Court would not allow me to file such a motion.

40. I also tried contacting bond agencies to see if there was a way to pay a lesser amount and have them cover the towing and storage fees (as a filing fee), but the agencies said they do not do such bonds and were not even aware of any agency that does.

41. Despite the Nissan not being related to the federal offenses against Samuel, and no other Charges being brought related the Nissan, the United States did not return the vehicle, nor did Defendant initiate a forfeiture action for my car. Instead, Defendant retained the vehicle for over 19 months through its agents McDonalds Towing and KDPS.

42. David eventually spoke to a higher-up at Defendant's agent McDonalds Towing, and had a verbal spar concerning the towing/storage fees and the refusal to release the Nissan. Both parties stated that they would likely be going to initiate civil actions over this issue during the call.

43. I eventually brought a civil suit against the Kalamazoo Department of Public Safety (KDPS) in the 9'th Circuit Court in Kalamazoo. (Ex. 8—Initial complaint against KDPS)

44. Eventually this complaint was amended and I added all of the law enforcement officials present during the seizure of my vehicle, McDonalds Towing, the 8'th District Court, Kalamazoo Prosecutor Benjamin Norg, the City of Kalamazoo, the County of Kalamazoo, , and the Kalamazoo County Prosecutor's Office.

45. The pleadings by the defendants in that civil action clearly displayed that the City of Kalamazoo, its law enforcement agency (KDPS), and McDonalds Towing were acting under the direction and control of the United States, and thus, the United States had possession and control over the Nissan.  See the following pleadings in that action:  1) County of Kalamazoo, Benjamin Norg, Kalamazoo Prosecutor's Office, and 8'th District Court's (from Hereon "County Defendants') Brief in Support of Motion for Summary Disposition ("MSD") dated 12-30-24 at pg. 9 (Ex. 9); 2) City of Kalamazoo Defendants' Brief in support of MSD, dated 12-30-2024 at pages 3, 11, and 13 (Ex.10); 3) County Defendants' Brief in Support of Plaintiffs' Motion to Dismiss, dated 1-27-2025 at page 5 (Ex. 11)

46. Indeed, John Stolsonberg of KDPS is also a Task Force Officer for the FBI.  It was John Stolsonburg who contacted FBI Special Agent Buttery to inquire as to whether my vehicle could be released.  Then, Buttery got authorization by an Attorney for the United States to remove the investigatory hold on the Nissan and leave it in possession of United States agent McDonalds Towing.

47. The claims in the 9'th Circuit Kalamazoo Court civil action brought by my brother and me were dismissed as frivolous in an Order entered on 3-10-2025. (Ex. 12—Judge Bell Order dated 3-10-2025).

48. I am trying to appeal the 9'th Circuit Court's dismissal of my action, and that appeal is

currently pending in the Michigan Supreme Court.

49. Due to the fact that the Nissan had been abandoned, I filed a separate action in the 8'th District Court of Kalamazoo against McDonalds Towing, KDPS, and the City of Kalamazoo seeking the return of my vehicle and/or monetary compensation if the vehicle had been sold or otherwise disposed of (Ex. 13) complaint made in the 8'th District Court).

50. Again, the City of Kalamazoo and KDPS illustrate in their responsive pleading that the United States controlled the seizing, retaining, refusal to return, and acquiescence of sale in the of the Nissan.  (See pages 2 and 4-5 of the City of Kalamazoo and KDPS's Brief in Support of MSD filed in the 8'th District Court, dated 5-2-25 (Ex. 14))

51. On August 11, 2025, I learned that the Nissan had actually been of 9-24-2024.  I learned of this by speaking to a McDonalds Towing employee over the phone.  I called back to get more information, but a man claiming to be the owner told me to stop bothering his employees and to contact his attorney.

52. I have approximately $23,000 invested in total in the Nissan and the United States has taken my vehicle and sold it through their towing agent without bringing any criminal prosecution tied to the vehicle, and without initiating any forfeiture proceeding.  I have not received a penny in compensation.

CLAIMS

53. COUNT 1:  UNLAWFUL TAKING UNDER THE FIFTH AMENDMENT

A.  The retention of the Nissan after the FBI learned of the MSP investigation into Samuel, at which time the FBI abandoned its fraud investigation and piggybacked the MSP investigation to indict Samuel for federal sex offences, was an unlawful taking without

just compensation.  These federal charges were in no way related to the Nissan and in any legitimate government interest in the Nissan ceased to exist at this time.  The specific date of this abandonment is between 12-1-2022 (FBI discovery of MSP investigation) and April 25, 2023 (Date of federal indictment against Samuel).  Indeed, the fact that the (unknown) U.S. Attorney authorized the hold to be removed from the Nissan because Samuel would not be sentenced for another year—in a case that bore no relation to the Nissan—clearly demonstrates that any legitimate interest in the Nissan had long ago subsided.

B.  Secondly, the release of the hold on the Nissan on 5-7-2024, but the continued retention of the Nissan through United States agents KDPS and McDonalds Towing constituted an unlawful taking without just compensation.

C.  Thirdly, the selling of the Nissan through its McDonalds Towing, or acquiescence in such sale was an unlawful taking.

54. COUNT 2:  ILLEGAL EXACTION

A.  The refusal to return my vehicle to me, but instead maintain possession through its towing agent and force me to pay an excessive fee or forfeit my vehicle was an illegal exaction.  Indeed, this imposed on me an unreasonably excessive fee that was truly incurred by the United States continued and unjustified retention of my vehicle.

RELIEF REQUESTED

55. Actual Damages in the amount of no less than $25,000 for the loss of the Nissan and emotional injury therein due to the vehicle's sentimental value.

56. Punitive damages in an amount no less than the actual damages caused to deter future similar conduct by the United States, and to ensure that justice is truly served.

57. Any other relief this Honorable Court feels is just and reasonable.

under penalty of perjury

I certify that the above statements are true to the best of my knowledge and belief.

*Thomas Benjamin Kuhl*

Thomas Benjamin Kuhl, 5-14-2026   5-18-2026   TBK